IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CIVIL ACTION NO. |
| Plaintiff, | : |
| v. | : 1:11-CV-2391-ODE |
| | : |
| ONE 2011 PORSCHE PANAMERA TURBO, VIN WP0AC2A76BL090274; ONE 2011 AUDI Q7, VIN WA1DGBFE8BD006887; AND ONE 1972 CHEVROLET CHEVELLE MALIBU CONVERTIBLE, VIN 1D67J2B671803; | : |
| Defendants. | : |

RESPONSE TO CLAIMANT'S MOTION TO VACATE ORDER
AUTHORIZING THE INTERLOCUTORY SALE OF THE DEFENDANT 2011
PORSCHE PANAMERA TURBO

COMES NOW the United States of America, Plaintiff in this civil forfeiture action, and files this response to Claimant Bryan Williams' motion to vacate this Court's October 14, 2011, order authorizing the United States to sell the Defendant 2011 Porsche Panamera Turbo.

## Background

On October 11, 2011, the United States and Claimant Porsche Financial Services ("PFS") jointly moved this Court to authorize the interlocutory sale of the Defendant 2011 Porsche Panamera Turbo, VIN WP0AC2A76BL090274, because

the Porsche was accruing storage costs, depreciating, and because PFS has a contractual right to repossess the Porsche based on its confiscation by the United States. [Doc. 20]. On October 14, 2011, this Court granted that motion, allowing the United States to sell the Porsche for no less than $100,000. [Doc 21]. Twenty-six days later, on November 9, 2011, Claimant Bryan Williams filed a motion seeking to set aside the Court's order granting interlocutory sale. [Doc. 22].

## Argument

The Court granted the United States and PFS's joint motion for interlocutory sale in three days, therefore Claimant did not have an opportunity to file a timely response in opposition. Williams fails to explain, however, why he waited nearly a month to file the present motion to vacate, a month during which, under normal circumstances, the Porsche may have already been sold.[1] Regardless, Williams has not presented any argument that would warrant this Court vacating its order authorizing interlocutory sale.

**I)** **The interlocutory sale of a seized vehicle is appropriate where the vehicle is subject to deterioration, storage costs are excessive, the owner is in default, or where other good cause exists. Here, the Defendant Porsche is subject to depreciation, has accrued nearly $1,300 in storage fees in six months and Williams is in default**

---

[1] Due to a contractual issue, the United States Marshals Service is seeking a new vendor to handle the sales of vehicles in its possession.

**under the sales contract. Was it appropriate for the Court to authorize the interlocutory sale of the Porsche?**

Interlocutory sales in civil forfeiture actions are governed by Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  According to the rule, a court may order an interlocutory sale "on motion by a party" if:

> (A)   the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
> (B)   the expense of keeping the property is excessive or is disproportionate to its fair market value;
> (C)   the property is subject to a mortgage or to taxes on which the owner is in default;
> (D)   the court finds other good cause.

It is clear from the plain language of these rules that the primary purposes of interlocutory sales are to preserve the value of the property and preserve the rights of lien holders, both issues relevant to the present case.  Despite Williams' urgings, nothing in the rule requires the United States to show any unusual or special circumstances to be granted authorization to sell; on the contrary, the interlocutory sale provision was likely drafted because these circumstances are so common.

Here, the United States contends that Interlocutory sale is appropriate for three reasons.  First, the Porsche, like any vehicle, is subject to deterioration, which

in this case primarily means the deterioration of its value due to depreciation. Second, storage and maintenance expenses will continue to add up as long as Williams' criminal case and this civil action are pending. Finally, because Williams is in default under the terms of the sales contract that Williams entered into with PFS, PFS has an immediate right to repossess the Porsche.

1) <u>The Porsche's value is diminishing by the day</u>

The Porsche is subject to continued depreciation and therefore should be sold in order to preserve its value. As Williams points out, nearly all motor vehicles are subject to depreciation, and the Defendant Porsche is no different. It is in all parties' interests, including Williams', to prevent the further diminution of the Porsche's value, and a prompt sale is the only way in which to achieve this.

2) <u>Storage and maintenance costs are accruing rapidly</u>

Storage and maintenance costs related to the retention of the Defendant Porsche continue to accrue, and will do so indefinitely until this case is resolved. Because the resolution of this matter hinges on the resolution of Williams' related criminal matter pending in Maryland, it is difficult to estimate how long it may be until this matter is resolved, however it is likely to go on for several months or even a couple of years.

The Porsche has been in custody since April 5, 2011, and after initial processing was moved to the private storage facility that stores vehicles under the terms of a contract with the United States Marshals Service. As of November 7, 2011, storage expenses at the facility total $1,279.55 and those expenses will continue to accrue at a rate of $7.00 a day. While $1,279.55 may not be "excessive" yet, in another six months, the storage costs will have doubled while the value of the Porsche will have further diminished.

3) <u>Williams is in default under the terms of his sales contract</u>

As set forth in the United States' and PFS's joint motion for interlocutory sale, the retail installment contract that Williams entered into at the time he purchased the Porsche sets forth that Williams will be in default if PFS reasonably deems the vehicle to be in danger of misuse or **if the vehicle has been confiscated**. Williams is under indictment in the District of Maryland, where he and five other individuals are charged with conspiracy to traffic cocaine. The United States alleges that the Porsche was purchased with proceeds of Williams' illegal drug trafficking and confiscated Williams' Porsche for that reason. Therefore, not only has Williams defaulted under the terms of the sales contract,

but his default begs the question of whether he even has standing to contest this interlocutory sale.

**II)    The Maryland case has no bearing on the sale of the Porsche**

No action taken by the district court in Maryland prevents this Court or the United States from selling the Defendant Porsche.  It is well settled that the United States has sole discretion in deciding whether to pursue forfeiture in a criminal case or in a parallel civil proceeding.  See United States v. Houshar, 2006 WL 562206 at *6 (E.D. Pa. Mar. 7, 2006) (stating that it is the government's prerogative how to pursue forfeiture; defendant must follow the government's lead); Cassell v. United States, 348 F. Supp. 2d 602, 606 (M.D.N.C. 2004) (government chooses whether to utilize criminal or civil forfeiture).

In this matter, the United States filed this civil forfeiture action against Williams' property in part to preserve the option to proceed civilly. That same property has been named as subject to forfeiture in the indictment pending against Williams in Maryland. It is the United States' prerogative, not Williams', as to how forfeiture will ultimately be pursued, but by filing the civil action within 90 days of the seizure, the United States has preserved its right to proceed civilly.

6

Williams correctly points out that the United States filed a motion in the Maryland district court seeking to retain property related to Williams and his co-defendants for forfeiture, including the Defendant Porsche. That motion, which has not yet been granted, was made under 18 U.S.C. § 983(a)(3)(B)(ii)(II).  Based on the context of the surrounding text, it is clear that § 983(a)(3)(B)(ii) is merely a way for the United States' to preserve *its* right—and not the district court's—to maintain possession of the property for forfeiture.  Section 983(a)(3)(B) does not grant a court the right to hold property and should not be read as such, particularly when this Court, sitting the district in which the property is stored, has concurrent jurisdiction over the property by virtue of this parallel civil forfeiture action.

### III)   A $100,000 reserve price is adequate

Williams also contends that the United States "contemplates" selling the Porsche for $100,000, what he terms a "discount."  This is simply untrue.  The United States requested that this Court set a $100,000 floor for the selling price of the vehicle specifically to ensure that the Porsche did not sell for a sum substantially lower than its appraised value, which at the time of its seizure six months ago was $122,565, according to the U.S. Marshals Service.  When the

7

vehicle is sold, it will be sold at a public auction. This will help ensure that the vehicle is sold at fair market value.

It is curious that in the same motion, Williams asks this Court to force the United States to store the Porsche for what will likely be many months or years, depreciating all the while, and then complains that $100,000 is too low a sale price. If Williams were to prevail on his motion, the Porsche would depreciate and accrue storage costs for many months or years, until his case is concluded, and could very well be worth less than $100,000 at that time. Nobody–not Williams, not the United States, and not Porsche Financial Services–benefits the long-term storage of the Porsche. The only way to protect the interests of *all parties* is for the Porsche to be promptly sold, and all funds in excess of PFS's lien amount and the storage expenses ordered held pending the resolution of this matter.

## Conclusion

The interlocutory sale of the Defendant Porsche is appropriate under Rule G(7) and is the best method to protect the interests of all parties to this action. In addition, Williams has failed to demonstrate that the parallel criminal action in Maryland prevents this Court from ordering the sale of the Porsche. For these reasons, Williams' motion should be denied.

This  17th  day of November, 2011.

          Respectfully Submitted,

          SALLY QUILLIAN YATES
          UNITED STATES ATTORNEY

          */s/ G. Jeffrey Viscomi*
          G. JEFFREY VISCOMI
          ASSISTANT U.S. ATTORNEY
          GEORGIA BAR NO. 289074
          75 SPRING STREET, S.W.
          SUITE 600
          ATLANTA, GEORGIA 30303
          (404)581-6036 - PHONE
          jeffrey.viscomi@usdoj.gov